UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MICHELLE TALLMAN,

          Plaintiff,

      v.                                            Case No. 21-C-340

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

          Defendant.

---

## DECISION AND ORDER REVERSING THE COMMISSIONER'S DECISION

---

Plaintiff Michelle Tallman filed this action for judicial review of a decision by the Commissioner of Social Security denying her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Tallman contends that the decision of the administrative law judge (ALJ) is flawed and requires remand for several reasons. For the reasons that follow, the Commissioner's decision will be reversed and remanded for further proceedings.

## BACKGROUND

Tallman filed an application for a period of disability and disability insurance benefits on June 26, 2018, and an application for supplemental security income on August 19, 2018, alleging disability beginning on June 1, 1990. R. 109, 328, 335. She listed refractory primary generalized epilepsy, high cholesterol, grand mal seizures, petit mal seizures, depression, anxiety, and acid reflux as the conditions that limited her ability to work. R. 386. After Tallman's claims were denied initially and on reconsideration, she requested a hearing before an ALJ. R. 109. Prior to the hearing, Tallman amended her alleged onset date to August 19, 2014. R. 110. On April 14,

2020, ALJ Dean Syrjanen held a hearing at which Tallman, who was represented by counsel, and a vocational expert (VE) testified. R. 129–56.

At the time of the hearing, Tallman was 45 years old and lived with her aunt and uncle. R. 138. She testified that she completed the eleventh grade but obtained her GED. *Id.* Tallman stated that she worked from 2012 to July 2017 as a babysitter but had not worked since. R. 139. When asked what prevented her from returning to work of any kind, Tallman responded that her epilepsy gave her the most trouble. R. 140–41. She explained that she experienced "grand mal" seizures that caused her to lose consciousness, foam at the mouth, stiffen up, and stop breathing. R. 141. Tallman testified that it typically takes her a few days to completely recover from these larger seizures. R. 148. She also stated that she experienced "mini seizures" that caused her to lose consciousness for a few seconds and her face to distort. R. 143. She explained that the mini seizures also caused her to drop anything she's holding and lose her train of thought. R. 143–44. Tallman testified that she experienced grand mal seizures roughly once every two months and mini seizures between three and 45 times per day. R. 141–43. She stated that she had a driver's license but had not driven in three years because of the seizures. R. 138.

In a twelve-page decision dated July 2, 2020, the ALJ determined that Tallman was not disabled. R. 109–20. In reaching his decision, the ALJ followed the five-step sequential evaluation process established by the Social Security Administration (SSA) for determining disability. The ALJ determined that Tallman had not engaged in substantial gainful activity since April 19, 2014, the alleged onset date. R. 112. Because her insured status expired in December 2008, the ALJ concluded that the amendment of the alleged onset date effectively constituted a request to withdraw her application for disability insurance benefits and dismissed that application. R. 110. Next, the ALJ determined that Tallman had the following severe impairments: seizure

2

disorder, depressive disorder, and anxiety disorder. R. 112. But the ALJ concluded that Tallman did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

The ALJ then assessed Tallman's residual functional capacity (RFC), finding that Tallman could perform light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations:

> she is limited to no climbing of ladders, ropes, or scaffolds; she must avoid exposure to workplace hazards such as moving mechanical parts and unprotected heights; she is limited to jobs that do not require commercial driving; she is limited to simple, routine, repetitive tasks; she is limited to low stress work environments defined as jobs with no inflexible or fast paced production requirements, involving only simple decision making and no more than occasional changes in work setting; she is limited to jobs where tasks can be performed independently and involve no more than occasional interaction with supervisors and coworkers and no interaction with the public.

R. 114. The ALJ found that Tallman had no past relevant work and that, considering her age, education, work experience, and RFC, Tallman was capable of performing jobs existing in significant numbers in the national economy, including inspector/hand packager, small parts assembler, and laundry folder. R. 118–19. Based on these findings, the ALJ concluded that Tallman was not under a disability from June 1, 1990, through the date of the decision. R. 119. The Appeals Council denied Tallman's request for review of the ALJ's decision, making that decision the final decision of the Commissioner. R. 1.

## LEGAL STANDARD

The Commissioner's final decision will be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. § 405(g); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009)). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811 (citing *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009)). The ALJ "must build an accurate and logical bridge from the evidence to his conclusion[s]." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (citing *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000); *Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998)).

The ALJ is also expected to follow the SSA's rulings and regulations. Failure to do so, unless the error is harmless, requires reversal. *See Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court "does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

## ANALYSIS

Tallman argues, among other things, that the ALJ failed to consider all of the objective evidence regarding her seizures at step three of the sequential evaluation process. At step three, the ALJ must determine whether the claimant's impairments or combination of impairments meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). "In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than perfunctory analysis of the listing." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (citation omitted).

4

Listing 11.02 describes epilepsy, documented by a detailed description of a typical seizure and characterized by A, B, C, or D:

> A. Generalized tonic-clonic seizures (see 11.00H1a), occurring at least once a month for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C) or
>
> B. Dyscognitive seizures (11.00H1b), occurring at least once a week for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C) or
>
> C. Generalized tonic-clonic seizures (see 11.00H1a), occurring at least once every 2 months for at least 4 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:
> 1. Physical functioning (see 11.00G3a); or
> 2. Understanding, remembering, or applying information (see 11.00G3b(i)); or
> 3. Interacting with others (see 11.00G3b(ii)); or
> 4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
> 5. Adapting or managing oneself (see 11.00G3b(iv))
>
> or
>
> D. Dyscognitive seizures (see 11.00H1b), occurring at least once every 2 weeks for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:
> 1. Physical functioning (see 11.00G3a); or
> 2. Understanding, remembering, or applying information (see 11.00G3b(i)); or
> 3. Interacting with others (see 11.00G3b(ii)); or
> 4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
> 5. Adapting or managing oneself (see 11.00G3b(iv)).

Listing 11.02. As relevant here, "generalized tonic-clonic seizures" are characterized by "loss of consciousness accompanied by a tonic phase (sudden muscle tensing causing the person to lose postural control) followed by a clonic phase (rapid cycles of muscle contraction and relaxation, also called convulsions)." *See* Listing 11.00H1a.

The ALJ found that Tallman's "seizure disorder does not meet the requirements of section 11.02 of the listings as there is no evidence of tonic-clonic seizures occurring at least once a month for at least three consecutive months despite adherence to prescribed treatment or evidence of dyscognitive seizures occurring at least once a week for at least three consecutive months despite

adherence to prescribed treatment." R. 112. He also concluded that "[t]here is no evidence of generalized tonic-clonic seizures occurring at least once every two months for at least four months despite adherence to prescribed treatment with evidence of a marked limitation in one of the following: 1. Physical functioning or 2. Understanding, remembering, or applying information or 3. Interacting with others or 4. Concentrating, persisting, or maintaining pace or 5. Adapting or managing oneself." R. 112–13.

Tallman asserts that the ALJ failed to properly consider the "Medical Source Statement – Seizure Disorder" form completed by Dr. Brian Jenkins. In the medical source statement, Dr. Jenkins indicated that Tallman had generalized epilepsy and that she has a seizure "multiple times per day." R. 1015. He opined that Tallman had "grand mal or psychomotor seizures documented by EEG, occurring more frequently than once per month in spite of at least three months of prescribed treatment with [d]aytime episodes involving loss of consciousness or convulsive seizures." *Id.* Dr. Jenkins also noted that Tallman had "minor motor seizures . . . documented by EEG, occurring more frequently than once weekly in spite of at least three months of prescribed treatment with [a]lteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day." *Id.* Tallman asserts that the findings of Dr. Jenkins, if considered by the ALJ, "would have been sufficient to implicate a potential meeting or equaling of Listing 11.02, contrary to the ALJ's findings." Dkt. No. 24 at 7.

An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Although an ALJ is not required to mention every piece of evidence in the record, he cannot ignore entire lines of evidence

6

related to a claimant's condition or impairment. *See Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016); *see also Taylor v. Colvin*, 829 F.3d 799, 802 (7th Cir. 2016) (noting that the ALJ "must confront the evidence that does not support [his] conclusion and explain why that evidence was rejected" (internal quotation marks and citation omitted)). The ALJ's error is not harmless because a discussion of the evidence may have impacted the ALJ's conclusions at step three. The ALJ's listing discussion is deficient because it does not contain an analysis that allows the Court to trace the path of the ALJ's reasoning. Remand is therefore warranted in this case.

## CONCLUSION

For these reasons, the Commissioner's decision is **REVERSED** and **REMANDED** to the Agency pursuant to 42 U.S.C. § 405(g) (sentence four). Although the decision is reversed because of the error in failing to sufficiently evaluate Tallman's seizure disorder at step three of the sequential evaluation process, the Commissioner should also address Tallman's other claims of error on remand, including the ALJ's alleged failure to explain his deviation from the state agency psychologists' opinions without explanation and his alleged error in assessing Tallman's credibility. Further consideration of these claimed errors on remand will aid in reaching the final resolution of the case and avoid further remands in the future. The Clerk is directed to enter judgment forthwith.

**SO ORDERED** at Green Bay, Wisconsin this 5th day of August, 2022.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge

7